

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 01 C 3769 | DATE | 8/26/2002 |
| CASE TITLE | Andrew Zienciuk v. City of Chicago, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendant's Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due _____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons set forth in the attached Memorandum Opinion and Order, this Court GRANTS the City of Chicago's motion for summary judgment [19-1], *sua sponte* GRANTS summary judgment on the Section 1983 claims against defendants Kania and Hayes, and dismisses the remaining state law claims without prejudice. This case is closed.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | date docketed | 28 |
| X | Docketing to mail notices. | | |
| ✓ | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| mds(lc) | courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ANDREW ZIENCIUK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 01 C 3769 |
| v. ) | |
| ) | HONORABLE DAVID H. COAR |
| THE CITY OF CHICAGO, OFFICER ) | |
| DAVID KANIA and OFFICER DAVID ) | |
| HAYES, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Andrew Zienciuk ("Zienciuk") brings an eight-count complaint against the City of Chicago ("City") and Police Officers David Kania ("Kania") and David Hayes ("Hayes") (collectively "Defendants") in this Court under 42 U.S.C. § 1983 ("Section 1983") for excessive and unreasonable force and under various state laws for the alleged battery and subsequent arrest and prosecution that arose from a bar fight between Zienciuk and Kania and Hayes during the early morning hours of May 26, 2000. Before this court is the City's motion for summary judgment. For the following reasons, the City's motion for summary judgment is GRANTED. In addition, this Court *sua sponte* grants summary judgment in favor of defendants Kania and Hayes on the Section 1983 claims and dismisses the remaining state law claims against the defendants without prejudice.

## I. Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P.



56(c); Michael v. St. Joseph County, et. al, 259 F.3d 842, 845 (7th Cir. 2001). A genuine issue of material fact exists for trial when, in viewing the record and all reasonable inferences drawn from it in a light most favorable to the non-movant, a reasonable jury could return a verdict for the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Hedberg v. Indiana Bell Tel. Co., 47 F.3d 928, 931 (7th Cir. 1995).

Because the purpose of summary judgment is to isolate and dispose of factually unsupported claims, the non-movant must respond to the motion with evidence setting forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(c); Michael, 259 F.3d at 845; Albiero v. City of Kankakee, 246 F.3d 927, 932 (7th Cir. 2001). To successfully oppose the motion for summary judgment, the non-movant must do more than raise a "metaphysical doubt" as to the material facts, see Wolf v. Northwest Ind. Symphony Soc'y, 250 F.3d 1136, 1141 (7th Cir. 2001) (citation and quotation omitted), and instead must present definite, competent evidence to rebut the motion, see Albiero, 246 F.3d at 932. Rule 56(c) mandates the entry of summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. A scintilla of evidence in support of the non-movant's position is not sufficient to oppose successfully a summary judgment motion; "there must be evidence on which the jury could reasonably find for the [non-movant]." Anderson, 477 U.S. at 250.

## II. Factual Background

The following facts are taken from the parties Local Rule 56.1 Statement of Uncontested Facts. At all times relevant, Hayes and Kania were employed by the Chicago Police Department and were

assigned to the Alternate Response Program.[1] The Chicago Police Department's Alternate Response Section is the non-emergency service division within the Office of Emergency Communications. Officers assigned to that Section receive calls for service through the City's "311" Non-Emergency City Service Request Telephone Number. Complaints of battery and/or disorderly conduct normally will not be processed by the Alternate Response Section.

Both Kania and Hayes worked on the third watch of May 25, 2002, which started at 3:00 p.m. and ended at 11:00 p.m. The Twilight Tavern and Bar is located at 4644 North Central Avenue in Chicago, Illinois, and is within the City of Chicago's 25th Police District. Zienciuk arrived at the Twilight Tavern and Bar on May 26, 2000 at about 1:00 a.m. While at the bar, Zienciuk talked to his friend Christopher Babiracki and he drank approximately two rum and cokes. At about 2:00 a.m., the owner of the bar indicated that "it's last call, time to finish." At this point, a male voice yelled, "Greaseball get out or I will call immigration." Without turning around to identify the speaker, Zienciuk responded, "Why don't you call Santa Claus." Someone then approached plaintiff from behind and threw him to the floor. While face up on the floor, Zienciuk saw a heavy-set individual who told him, "You don't know who you fuck with." The heavy-set individual then got on top of Zienciuk and began punching him. Zienciuk later identified this person as Kania. Kania was wearing a dark jacket and pants. The jacket was a waist-length windbreaker that bore no insignias or markings and it was zippered up to Kania's chest.

While Kania punched Zienciuk, a thinner man, who Zienciuk later identified as Hayes, kicked Zienciuk. Hayes was wearing a T-shirt or polo shirt and jeans. Two or three other men were with

---

[1] Kania and Hayes do not work exclusively in the Alternate Response Section, each also work as patrol officers. Kania has been a Chicago Police Officer for ten years and Hayes has been one for five years.

-3-

Kania and Hayes at the Twilight Bar and Tavern. All of them were dressed casually and Zienciuk did not observe any of them wearing a Chicago Police Department uniform. Zienciuk did not observe any of his assailants carrying a weapon.[2]

At some point while Zienciuk was on the ground struggling with Kania, Zienciuk grabbed Kania's chest and he tore a metal object from the shirt Kania wore underneath his jacket. Zienciuk realized the object was a badge, although he thought it was part of a security guard's uniform. Zienciuk asked the bartender to call the police and either Kania or Hayes stated, "we are the police." Prior to Zienciuk being pushed off his chair, beaten and kicked in the bar, nobody identified themselves as police officers to him. At some point during the altercation, Kania asked the bar owners to call the police three times and said that an officer needed assistance; the bar owners refused to comply with his requests.

After being attacked, Zienciuk fled outside the bar while four of the five men, including Kania and Hayes, pursued him. They punched Zienciuk and attempted to bring him to the ground; they were unsuccessful, however, because they were drunk and lacked coordination. When Zienciuk used his cell phone to call the police, the attackers tried to dissuade him by grabbing his cell phone and by telling him, "you don't need to call the police. We can forget about everything. No problem." They asked Zienciuk to return the badge that he tore from Kania's shirt. At this point, Zienciuk was convinced that his attackers were police officers. He kept Kania's badge until uniformed on-duty police officers responded to his call for assistance, at which point he gave the badge to one of those officers.

---

[2] At Zienciuk's criminal trial, the officers testified that Zienciuk attempted to remove Kania's gun from its holster. Zienciuk denied seeing a weapon and denied ever attempting to grab a gun from any of his assailants.

After approximately five to fifteen minutes, several uniformed police officers arrived at the scene. Kania identified himself to them as a police officer. The uniformed on-duty police officers asked Zienciuk if he required medical assistance and he declined. Kania asked one of the officers to arrest Zienciuk. A uniformed on-duty police officer asked Zienciuk to accompany him to the police station and he agreed. Upon arrival at the station, Zienciuk was placed in an interview room where he was allowed to use his cell phone and keep his watch. A police officer conducting the investigation brought him coffee. Zienciuk was not placed in handcuffs and neither Kania nor Hayes ever told him that he was under arrest.[3] At about noon the next day, a police officer told Zienciuk that he was being charged with battery.

Officer Joseph Prete is a patrol officer with the Chicago Police Department's 16th District. He responded to a call at the Twilight Tavern and Bar on May 26, 2000 during the early morning hours. Officer Prete was the first arresting officer for Zienciuk on May 26, 2000. The arrest report identifies the second arresting officer as "Cunningham/Anthony." Officer Prete, however, completed all necessary paperwork in connection with Zienciuk's arrest. Neither Kania nor Hayes were arresting officers for Zienciuk and they never told him that he was under arrest. Kania and Hayes asked Officer Prete to charge Zienciuk with battery; both were complaining witnesses against Zienciuk.

Zienciuk did not seek any psychiatric or psychological treatment as a result of the event of May 26, 2000. He did not experience any psychological damage as a result of this incident, except for minor

---

[3] The Complaint alleges that Zienciuk was placed in "wrist locks," but in his deposition, Zienciuk denies that Kania or Hayes ever placed him in handcuffs or told him that he was under arrest.

stress related to attending court on the criminal charges. On April 19, 2001, Zienciuk was acquitted of the battery charge following a bench trial in the Cook County Circuit Court.

Chapter 2-84 of the Chicago Municipal Code establishes and governs the City of Chicago's Department of Police. It creates a Police Board that is empowered to adopt rules and regulations for the governance of the police department. The Police Board is responsible for nominating candidates for the position of Superintendent of Police, which are transmitted to the mayor for final selection. The Superintendent is authorized to administer the department in a manner consistent with the ordinances of the city, the laws of the state, and the rules and regulations of the Police Board. The Superintendent establishes his administration of the department, at least in part, by issuing general orders. Sworn members of the Department are required to know and conform to the rules, regulations, orders, procedures, and directives of the department. Officers who violate the rules and regulations are subject to discipline.

It is the official policy of the City of Chicago that all citizens be treated with dignity and respect. Toward that end, the Rules and Regulations of the Chicago Police Department require sworn members to obey all laws and maintain a courteous and respectful attitude when dealing with all persons. Rule of Conduct No. 8 expressly prohibits disrespect or maltreatment of any person by a sworn member, while on- or off-duty. Rule of Conduct No. 9 prohibits sworn members from engaging in unjustified verbal or physical altercations, while on- or off-duty.

The Chicago Police Department requires its members to purchase their own firearm, subject to a list of approved manufacturers and models. Officers can purchase weapons for personal use, providing they comply with the terms of the Chicago Municipal Code. General Order 92-3 strictly instructs sworn members "to refrain from [carrying a firearm during non-duty hours] when there is a

likelihood that they will be consuming alcoholic beverages . . . ." The City of Chicago allows off-duty police officers to employ their police powers when confronted with an "emergency" situation requiring police attention. The primary emergency situation contemplated by the Rules and Regulations involves officers who witness a crime in progress. General Order 92-3 states: "[n]othing in this policy statement is to be construed as diminishing a sworn member's responsibility to take appropriate police action, which can be as little as summoning the police for help, when observing a crime in progress."

### III. Discussion

Zienciuk alleges a cause of action under 42 U.S.C. § 1983 against the City, Kania, and Hayes for violating his constitutional rights when Kania and Hayes used unreasonable and excessive force against him (Count I). The rest of his claims are state law claims: *respondeat superior* liability for the battery inflicted by Kania and Hayes (Count II); false arrest (Count III); false imprisonment (Count IV); malicious prosecution (Count VI);[4] battery (Count VII); and intentional infliction of emotional distress (Count VIII). The City argues that summary judgment should be granted in its favor on all eight counts. This Court addresses the federal count first, as it establishes jurisdiction.

*A. Count I - Section 1983 Claim*

Zienciuk asserts a § 1983 claim against each of the defendants. Only the City of Chicago has moved for summary judgment. The City argues that, because it cannot be held vicariously liable under Section 1983 for injuries inflicted solely by its employees or agents, this Court should dismiss this federal claim against the City. This Court agrees. It is well established that a municipality may not be held liable under a theory of *respondeat superior*, and to impose liability on a municipality

---

[4] Zienciuk voluntarily dismissed Count V, which was a § 1983 malicious prosecution claim.

under section 1983, a plaintiff must identify a municipal "policy" or "custom" that caused the plaintiff's injury. Monell v. Dep't of Social Servs., 436 U.S. 658 (1978); Bd. of the County Comm'rs v. Brown, 520 U.S. 397 (1997); see also Payne v. Churchich, 161 F.3d 1030, 1044 (7th Cir. 1998). As Zienciuk has not alleged, nor has he procured evidence to prove, an existence of an unconstitutional municipal policy or custom, this Court grants summary judgment in favor of the City on this claim.

While Kania and Hayes have not moved for summary judgment, where one defendant files for summary judgment that the court grants, as is the case here, the district court may *sua sponte* enter summary judgment in favor of additional nonmoving defendants if the motion raised by the first defendant is equally effective in barring the claim against the other defendants and the plaintiff had an adequate opportunity to argue in opposition of the motion. Malak v. Assoc. Physicians, Inc., 784 F.2d 277, 280 (7th Cir. 1987); see also Price v. Rochford, 947 F.2d 829, 833 (7th Cir. 1994) citing Celotex, at 477 U.S. at 326 ("[D]istrict courts are widely recognized to possess the power to enter summary judgment *sua sponte*, so long as the losing party was on notice that [he] had to come forward with all of [his] evidence."). In this case, both parties briefed the issue of whether the individual officer defendants acted under color of law; therefore Zienciuk had ample opportunity to argue in opposition of this motion.

In order to establish § 1983 liability against individual officers,[5] a plaintiff must prove two essential elements: that the conduct complained of (1) was committed by a person acting under color of state law; and (2) deprived the plaintiff of rights, privileges, or immunities secured by the

---

[5] Because § 1983 claims against state officials in their official capacities are suits against the state and are therefore prohibited by the Eleventh Amendment, see Kentucky v. Graham, 473 U.S. 159, 167 (1985); Monell, 436 U.S. at 694, claims against Kania and Hayes in their individual capacity remain the only viable § 1983 claims.

-8-

Constitution or laws of the United States. Paratt v. Taylor, 451 U.S. 527, 535 (1981), overruled on other grounds by Daniels v. Williams, 474 U.S. 327 (1986). As an unwarranted assault and battery by persons acting under color of law clearly implicates the Fourth Amendment's protection against unreasonable searches and seizures, the issue in this case is whether Kania and Hayes were acting under color of state law when they pushed Zienciuk off the chair, punched and kicked him inside the bar, chased him outside, hit him, and told the police officers who responded to the call to arrest him. This Court finds that they were not.

An individual acts under color of state law for purposes of § 1983 when he exercises power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." United States v. Classic, 313 U.S. 299, 326 (1941); Thomas v. Pearl, 998 U.S. 447, 450 (7th Cir. 1993). Generally, actions of a state or local employee in his official capacity occur under color of law regardless of whether his conduct was in furtherance of the state's goals or whether the actions constitute an abuse of power. West v. Atkins, 487 U.S. 42, 49-50 (1988). On the other hand, state officials who act without clothing of state authority do not subject themselves to § 1983 liability. Hughes v. Meyer, 880 F.2d 967, 971 (7th Cir. 1989).

While most police officers are considered state officials for purposes of § 1983, the fact that an individual is a police officer does not render all of his actions to be under color of state law. Gibson v. City of Chicago, 910 F.2d 1510, 1517 (7th Cir. 1990). Similarly, whether the police officer was on or off duty does not resolve the question of whether he acted under color of law; rather, the essential inquiry is whether the defendant's actions related in some way to a police duty. Id. In fact, the United States Supreme Court has held that "acts of officers in the ambit of their personal pursuits are plainly excluded." Screws v. United States, 325 U.S. 91, 111 (1995); see also Pickrel v.

City of Springfield, 45 F.3d 1115, 1118 (7th Cir. 1995) (explaining that whether a police officer acted under color of state law turns largely on the specific acts performed, rather than on whether he was actively assigned at that moment to the performance of police duties).

Even after interpreting the facts in favor of Zienciuk, Kania's action of knocking Zienciuk off a bar stool and punching him, and Hayes's action of kicking Zienciuk while he was on the ground, are not related in *any* way to a police duty. Indeed, the police department rules and regulations clearly prohibit this kind of behavior by police officers. Not only were Kania and Hayes off-duty, but they were not wearing police uniforms, and they did not identify themselves to Zienciuk as police officers when they initially approached him. Zienciuk himself concedes that he never saw a uniform, nor was he aware if either of them were carrying a gun. In fact, he did not deduce that they were police officers until they asked him to return the badge while they were waiting for the police. Thus, the officers gave no indication that they were cloaked with state authority. The only allegation that comes close to establishing they implicated their state authority is that, after Zienciuk asked the bartender to call the police, someone answered, "we are the police." Even if such a flippant retort, made well after the battery was underway, could be interpreted as an assertion of state office, "a mere assertion that one is a state officer does not necessarily mean that one acts under color of state law." Gibson, 910 F.2d at 1516.

What happened in this case is a bar fight, plain and simple. One unknown individual made a derogatory comment, which prompted another individual, Zienciuk, to respond with a sarcastic retort. A fight ensued, instigated presumably by Kania, followed by a chase and further scuffle outside. Once outside, Zienciuk used his cell phone to call the police, and the attackers attempted to dissuade him from involving the police by telling him, "you don't need to call the police. We can

forget about everything. No problem." Neither Kania nor Hayes asserted their police authority over Zienciuk by arresting him, and they behaved the same way non-police officers would behave after they got into a brawl. While Kania asked one of the officers who responded to the call to arrest Zienciuk, he did so as a citizen pressing charges and not as a fellow police officer. Thus, but for the mere fact that Kania and Hayes happened to be police officers, section 1983 would not remotely be implicated. Since Section 1983 clearly was not designed for these kinds of circumstances, this Court also grants summary judgment in favor of defendants Kania and Hayes on this claim.

*II. Counts II, III, IV, VI, VII, and VIII*

Because this Court grants summary judgment in favor of the City and the defendant officers on the only federal claims before this Court, the Court *sua sponte* dismisses the remaining state law claims without prejudice.

### IV. Conclusion

For the foregoing reasons, this Court GRANTS the City's motion for summary judgment, *sua sponte* GRANTS summary judgment on the Section 1983 claims against defendants Kania and Hayes, and dismisses the remaining state law claims without prejudice. This case is closed.

Enter:

_____
David H. Coar
United States District Judge

Dated: August 26, 2002